THE STATE OF IOWA, Appellee, v. JOHN LARSON, Appellant.

1. **Larceny:** INDICTMENT: DUPLICITY. An indictment charging the larceny of thirty-two bushels of flaxseed, in sacks, the property of one L., and forty-eight bushels of flaxseed in sacks, the property of one P., is not objectionable upon the ground of duplicity.

2. **Practice:** EVIDENCE: CROSS-EXAMINATION. Evidence which is material to the issues in a cause, and which would be admissible if offered by the witnesses of the party whose case it supports, may properly be excluded when it is sought to introduce it through improper cross-examination.

3. **Practice in Supreme Court:** NON-REVERSIBLE ERRORS. The refusal of the district court to give to the jury certain instructions asked, which might properly have been given, is not ground for reversal when the matter of such instructions is contained in the instructions given by the court, and which are quite as favorable to the party whose instructions have been refused.

4. **Larceny:** ORIGINAL TAKING WITH CONSENT OF OWNER: INSTRUCTIONS TO JURY. The defendant claimed to have taken the flaxseed in question with the consent of the owner, or person in possession, for the purpose of satisfying a debt due him from the owner. Finding his team unable to draw the load he left a portion of the seed at the wayside, proceeded to town with the remainder, sold it, and returning for that left by the road, took that to town and sold it. The amount received for the first lot of seed was greater than the amount of the debt due the defendant. In his argument to the jury the county attorney claimed that, though the original taking was rightful, the defendant would still be guilty of larceny for going back, after the sale of the first lot of seed, and taking that left by the road and selling it. *Held,* that, under the circumstances, the court should have instructed the jury, that if the original taking of the flaxseed was by consent, then the subsequent sale of the second load would not constitute larceny.

5. **Witness:** IMPEACHMENT: EFFECT. The successful impeachment of a witness by proof that his reputation for truth and veracity in the community in which he lives is bad, does not necessarily warrant the total rejection of the testimony of such witness except where it is corroborated by other credible evidence.

*Appeal from Cerro Gordo District Court.*

THURSDAY, MAY 26, 1892.

THE defendant was indicted, tried, convicted, and sentenced for the crime of larceny. The charging part of the indictment is as follows: "Defendant, March 26, 1890, did take, steal, and carry away thirty-two bushels of flaxseed, with sacks containing the same, to the value of thirty-five dollars, and the property of Lewis Larson, and forty-eight bushels of flaxseed in

sacks of the property of David Perry, of the value of forty-five dollars, all of said property being there and then in the possession of said Lewis Larson. The defendant appeals.—*Reversed.*

*Blythe & Markley*, for appellant.

*John Y. Stone*, Attorney General, and *Thomas A. Cheshire*, for the state.

GIVEN, J.—I. On the trial, and after the examination of the first witness was begun, the appellant moved that the state be required to elect whether to proceed on' the charge of larceny of the thirty-two bushels of flaxseed or of the forty-eight bushels. The appellant complains of the overruling. of this motion, and contends that the indictment charges two distinct larcenies. The charge is that at the same time and place the defendant did take, steal, and carry away this flaxseed, the property of the persons named. That the property stolen was owned by different persons does not not make the felonious taking separate offenses. If, in point of time and circumstances, the taking was done as a single act, then it is but one offense. *State v. Paul*, 81 Iowa, 597. It is said in argument that the taking could not be by the same act and at the same point of time. The flaxseed was in sacks, stored in a building, from which the sacks were carried and loaded in a wagon. The entire number of sacks could not be carried to the wagon at one time. If but one sack was carried at a time, then, according to the appellant's reasoning, the taking of each would be a separate larceny, though all were so taken as that the taking was one transaction. The appellant cites *State v. Ridley*, 48 Iowa, 372, wherein it was held that an indictment charging breaking and entering with intent to steal, and stealing, did not charge a compound offense, and that the larceny was

1. LARCENY: indictment: duplicity.

a distinct offense from the burglary. In such case the larceny would necessarily follow after the offense of breaking and entering was completed. While it is true that, if the taking were felonious, the larceny was completed with the taking of the first sack if no more had been taken, but, more being taken as a part of the same transaction, they all became the subject of the same larceny.

II. On the trial the defendant admitted that he took the flaxseed, and set up as his defense that Lewis Larson, his brother, who had possession of the seed, was indebted to him in the sum of thirty dollars and some cents, and that he took the seed, with the consent of his brother, on account of that indebtedness, or under circumstances that justify him in believing that his brother did consent to the taking, and that he took it in ignorance of the fact that Perry had any interest therein. Lewis Larson, being called by the state, testified to the ownership of the seed, that it was taken, and that he had sued out a warrant for the defendant. He stated on cross-examination that he owed the defendant, and that he told him he would pay him out of the flax,—"I would let him have the flax or money." The defendant then asked the witness, "Now, at the time that this flax was taken, did you recollect anything of that conversation?" to which he answered that he did not. This answer was stricken out on motion of the state, and the state's objection sustained to similar questions, as immaterial, and not proper cross-examination. It was certainly material to explain why Lewis Larson sued out the warrant for the arrest of his brother after having the conversation to which he testifies, but it was for the defendant to furnish that explanation and he should have done so by calling Lewis Larson as his own witness. The matters inquired about were not strictly proper cross-examination, and therefore the rulings were not erroneous.

2. Practice: evidence: cross-examination.

III. It appears that the defendant had loaded the entire number of bushels of flaxseed into his wagon at

3. PRACTICE in supreme court: non-reversible errors.

the place where it was stored, and started with the same to Clear Lake, where he had made arrangements the day before to sell it. His team being unable to draw the load all the way, he left a part of it by the wayside, and hauled the balance to town, where he sold it, receiving thirty-eight dollars and twenty cents therefor. He then returned and took up that which he had left, hauled it to the town and sold it, receiving forty-five dollars and twenty cents therefor. The defendant complains of the refusal to give instructions asked which are in substance as follows: That if prior to taking the flaxseed the defendant had authority from his brother to take the same, or if he had a well-founded belief that he had such right, he would not be guilty of larceny. The court gave this instruction: "If Lewis Larson had previously given the defendant his permission to take said flaxseed for the purpose of satisfying a debt due the defendant from him, or if the defendant honestly understood and believed that such permission was so given to him by Lewis Larson, and took said flax under and by virtue of such permission or supposed permission, then the defendant would not be guilty of larceny, and you should acquit him." The instruction given is quite as favorable to the defendant as that refused.

The defendant asked an instruction as follows: "If the original taking of the flaxseed in question was

4. LARCENY: original taking with consent of owner: instructions to jury.

in pursuance of a prior understanding with his brother, as claimed by the defendant, then the subsequent sale of the second load would not constitute larceny. In order to constitute the crime of larceny, the original taking from the possession of the owner must have been with felonious intent of depriving the

owners of their property therein, and without consent
of the owner or custodian thereof." The appellant
complains of the refusal to give this instruction. The
substance of the last sentence is contained in those
given, but the jury were not told that the taking up of
the part of the load left by the wayside would not be a
larceny if the original taking were not felonious,—a
fact that is so evident that it would seem not to require.
mention. The appellant contends that the instruction
should have been given because the county attorney
claimed in augument to the jury that, though the
original taking was rightful, the defendant was still
guilty of larceny for going back and taking the balance
of the flaxseed from where he had left it, and selling it.
The record shows that such a claim was made by the
county attorney. It is clear that, if the original taking
was not felonious, the taking of the second load from the
wayside where it had been left was not larceny. In
view of the amount of the debt which the defendant's
brother owed to him being less than the amount received
for the flaxseed, and less than the amount received for
the first load sold, and the fact that the seed belonged to
two different persons, might lead the jury to conclude,
in the absence of any instruction upon that subject, that
the claim of the county attorney was correct, and that,
though the original taking was not felonious, yet the
defendant was guilty by reason of the taking of the sec-
ond load from where he had left it. We think the instruc-
tion asked should have been given, in view of the claim
made by the county attorney, and that it was preju-
dicial to the defendant to refuse it under the circum-
stances.

V. The defendant having been examined as a wit-
ness in his own behalf, the state introduced evidence
tending to show that his general reputa-

5. WITNESS:
   impeach-
   ment: effect.

tion for truth and veracity, and his gen-
eral moral character, were bad. The

court instructed as follows:  "Where it is successfully proven that a witness who has testified has a bad reputation for truth and veracity in the community where he has recently lived, or that his general reputation as to moral character in that community is bad, such witness is deemed to be impeached in law; and the jury would be justified in entirely disregarding the testimony of such witness, except where such testimony is corroborated by other credible evidence or facts and circumstances appearing in evidence in the case."  The defendant complains of this instruction.

In *Green v. Cochran*, 43 Iowa, 553, the defendant asked the court to instruct that:  "The testimony of an impeached witness is to be taken with great care, by the jury, and, unless fully corroborated, the jury will be justified in giving to it no weight whatever; and it is only on such points as such witness may be corroborated that the witness is entitled to credence and weight with the jury."  The court says:  "Taken together, we think this instruction announces an incorrect rule, and that it was properly refused."  It is further said:  "It is true the jury, being the judges of the credibility of witnesses, might act upon such a rule. But it is not, we think, the law that they must, or even should, in all cases adopt such a measure of credibility. It is to be observed that this rule requires full corroboration, and that the witness shall be credited only upon the points in which he is so corroborated. In other words, an impeached witness must not be believed, except upon those points in which his testimony is unnecessary, which amounts to saying that the testimony of an impeached witness can never have any value. We think that an impeached witness may testify so consistently, and may deport himself in such a manner, and may be so corroborated as to material points, that the jury might feel justified in believing him upon some points in which he is not corroborated."  Following

the rule and reasoning in this case, we think the court erred in giving the instruction complained of.

VI. The complaint against the seventh paragraph of the charge is not well founded. That paragraph, taken in connection with the others, properly submitted the question whether the defendant had the consent of Lewis Larson to take the flaxseed, or had reason to believe that he had such consent. As, for the errors pointed out, the judgment of the district court must be reversed, we do not notice the further question made as to the sufficiency of the evidence to sustain the verdict. REVERSED.